UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY DUDLEY,

      Plaintiff,

  v.

METROPCS COMMUNICATIONS, INC., et al.,

      Defendants.

Case No. 14-cv-01802-VC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO STRIKE**

Re: Docket No. 8

### 1. Breach of Contract

The motion to dismiss the breach of contract claim is denied. MetroPCS advertises a month of cell phone service for a fixed, prepaid price. The service agreement, which has been incorporated by the amended complaint, provides that "Service Charges must be paid in advance and are due before the first day of your service cycle" and that "monthly service cycles are approximately thirty days long." Am. Compl., Ex. B, "Payment." The agreement further discusses what will happen if a customer fails to make the advance monthly payment by the anniversary date of the service cycle, specifying that the service could be "suspended" or "terminated":

> **Your payment will be considered late if we do not receive it before the first day of the service cycle for which the payment is due.** If you do not make all payments when they are due, you will be in default under this Agreement, and MetroPCS will be entitled to exercise any rights it may have under this Agreement, including the suspension or termination of Service to you. If we accept a late or partial payment, even if you mark the payment "paid in full," we do not waive our rights to suspend or terminate your Service or any other rights we may have. **If your Service is terminated** and you promptly pay amounts that are overdue, MetroPCS, in its sole discretion, may reconnect your Service after you have paid

any reconnection fees we have imposed.  **In such case, your service cycle anniversary date will not change resulting in fewer days of service for that month**.

Am. Compl., Ex. B, "Payment Disputes" (emphasis added).

Dudley contends that because the contract specifies that the customer will not receive a full 30 days of service in the event of payment following termination, while it is silent on whether the customer will receive a full 30 days of service in the event of payment following suspension, it is best interpreted as promising the customer a full 30 days of service in the case of payment following suspension.  And Dudley claims that because her service was suspended (not terminated) following her late payment, the defendants were contractually obligated to reset her service cycle anniversary date so that she received a full 30 days of service once it was reinstated.  This allegation states a claim for breach of contract because, although the contract certainly does not explicitly promise a full 30 days of service after payment is made to lift a suspension, it is ambiguous on this question, especially when compared to the language about termination.  *See Hayter Trucking, Inc. v. Shell W. E&P, Inc.*, 18 Cal.App.4th 1, 18 (1993) (explaining that where a complaint attaches a contract that is "reasonably subject to a construction sufficient to sustain a cause of action," the complaint should not be dismissed).

The defendants argue that Dudley cannot state a claim for breach of contract because she failed to satisfy her own contractual obligation when she failed to submit payment before her service cycle anniversary date.  But the above-quoted language shows that although a customer is in "default," when she does not pay by her anniversary date, this default does not terminate the contract.  The contract contemplates that the customer can get service restored by making a late payment, and it sets forth the conditions governing the parties' continued relationship should this occur.  Perhaps the defendants had the right to terminate their contractual relationship with Dudley when she failed to pay on time, but they did not do so; they chose to preserve the contractual relationship by reconnecting her service after she made a late payment.  Therefore, a contractual

2

relationship continued to exist when the defendants failed to give Dudley a full 30 days of service following her late payment, and, as discussed above, it is at least plausible (albeit somewhat unlikely) that they were contractually obliged to do so.

### 2. Common Law Fraud

The motion to dismiss the common law fraud claim is granted. Dudley alleges that MetroPCS intentionally misled her and others similarly situated to believe they would receive a full 30 days of service, even where they paid late after their service was suspended. In support of this claim, Dudley relies on (1) the language of the service agreement discussed above; (2) language in the agreement providing that "monthly service cycles are approximately thirty days long"; and (3) a MetroPCS advertisement offering "unlimited data, talk and text" for a fixed price "per month." Am. Compl., Exs. B and C. But these documents, while somewhat ambiguous, do not in themselves give rise to a fraud claim. The advertisement cited by Dudley does not even apply to the contract she had with the defendants, so it is useless to her. And the service agreement emphasizes that the customer must, if she desires another month's worth of service, make another payment in advance of her anniversary date. Although a customer who scrutinizes the agreement carefully might be prompted to inquire about the contract's ambiguity regarding the conditions under which a customer's suspension might be lifted, she could not reasonably conclude from this ambiguity that she was being promised a full 30 days upon reinstatement following suspension. Nor does the complaint include specific allegations to create a plausible inference that the defendants did anything more than engage in sloppy drafting by failing to specify that a customer who made a late payment after suspension would not get a full 30 days of service the following month. Dismissal of this claim is with leave to amend.

### 3. Statutory Claims

Counsel for Dudley conceded at oral argument that her claims under California statutory

3

law are dependent on the allegation that the defendants defrauded their customers. Therefore, these claims are dismissed with leave to amend as well.

### 4. Class Allegations

The motion to strike the class allegations is denied. At this stage, there is no reason Dudley cannot represent similarly situated customers who have opted out of the arbitration agreement. This issue may be revisited at class certification.

As discussed at the hearing on the motion to dismiss, discovery may go forward at this time on the breach of contract claim, as well as on class certification. However, because Dudley has made no showing that she could proceed on behalf of customers who did not opt out of the arbitration agreement, she is not entitled to discovery about those customers at this stage, with the possible exception of limited, reasonable discovery designed to explore whether all customers who properly sought to opt out of the arbitration agreement were determined by the defendants to have successfully opted out.

**IT IS SO ORDERED.**

Dated: August 7, 2014

_____
VINCE CHHABRIA
United States District Judge